## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:21-CV-22618-COOKE/O'SULLIVAN

JOSELYN DURAN-VALERO, *individually and*
*on behalf of all others similarly situated*,                    **CLASS ACTION**

     Plaintiff,                                                    **JURY TRIAL DEMANDED**

v.

COTY DTC HOLDING, LLC,

     Defendant.

_____/

### FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff Joselyn Duran-Valero brings this class action against Defendant Coty DTC Holdings, LLC, and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and, as to all other matters, upon information and belief, including investigation on conducted by Plaintiff's attorneys.

### NATURE OF THE ACTION

1.    This is a class action under the Florida Security of Communications Act, Fla. Stat. Ann. § 934.01, *et seq.* ("FSCA"), arising from Defendant's unlawful interception of Plaintiff's and Class members' electronic communications.

2.    At issue is Defendant's use of "session replay" spyware to collect, monitor, and record the electronic communications of visitors to its website.

3.    Plaintiff alleges that Defendant utilizes session replay spyware to intercept Plaintiff's and the Class members' electronic computer-to-computer data

communications with Defendant's website, including, but not limited to, how they interact with the website, their mouse movements and clicks, frequency of mouse clicks, mouse gestures, scroll movements, keystrokes, search terms, information inputted into the website, and pages and content viewed while visiting the website.

4.     Defendant intercepted, recorded, and then stored electronic communications regarding the webpages visited by Plaintiff and the Class members, as well as everything Plaintiff and the Class members did on those pages, *e.g.*, what they searched for, what they looked at, and the information they inputted.

5.     Upon information and belief, Defendant monitored and recorded Plaintiff's and the Class members' website visits so that it could learn their preferences, gain insight into their behavior, and create profiles that Defendant later utilized for targeted behavioral advertising, sometimes even sharing the data with third party marketing companies.

6.     The communications collected by Defendant provided Defendant with the ability to observe consumer behavior patterns, as well as model and predict consumers' behavior.

7.     As alleged below, Defendant intercepted the electronic communications at issue without the knowledge or prior consent of Plaintiff or the Class members.

8.     Defendant caused Plaintiff and the Class members injuries, including violations of their substantive legal privacy rights under the FSCA, invasion of their privacy, and potential exposure of their private information.

9.      Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct.  Plaintiff also seeks a declaration, as well as damages authorized by the FSCA on behalf of herself and the Class members, defined below, and any other available legal or equitable remedies to which they are entitled.

## PARTIES

10.      Plaintiff is, and at all times relevant hereto was, a citizen and permanent resident of Miami-Dade County, Florida.

11.      Defendant is, and at all times relevant hereto was, a corporation duly organized and validly existing under the laws of Delaware and maintains its principal place of business in New York.  Defendant is therefore a citizen of Delaware and New York.

## JURISDICTION AND VENUE

12.      This Court has personal jurisdiction over Defendant because Defendant directs, markets, and provides its business activities throughout the State of Florida, and makes its active commercial website available to residents of Florida for those interested in entering into contracts over the Internet with Defendant.   Indeed, Defendant's website allows residents of Florida to enter into transactions utilizing the website.  During the relevant time frame, Defendant entered into contracts for the sale of services with residents of Florida that involved the knowing and repeated transmission of computer data over the Internet.   This resulted in Defendant generating revenue from sales to residents of Florida, as well accepting payments from

Florida residents through the site and ultimately shipping products to Florida. Plaintiff's and the Class members' claims arise directly from Defendant's operation of its website.

13.     Further, this Court has personal jurisdiction over Defendant because Defendant's tortious conduct against Plaintiff occurred in substantial part within this District and because Defendant committed the same wrongful acts to other individuals within this judicial District, such that some of Defendant's acts have occurred within this District, subjecting Defendant to jurisdiction here.  As Defendant has admitted, the Class consists of more than 100 individuals who are located in Florida.  Notice of Removal, [DE 1], at ¶10.  Thus, Defendant knew or should have known that it was causing harm to those individuals while they were in Florida such that it was foreseeable to Defendant that its interceptions would harm Plaintiff and other similarly-situated individuals located in Florida.

14.     This court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because at least one member of the putative class, including Plaintiff, is a citizen of Florida, and Defendant is a citizen of Delaware and New York, thus CAFA's minimal diversity requirement is met.  Additionally, Plaintiff seeks $100.00 per day in damages for each violation, which, when aggregated among a proposed class of over 100, exceeds the $5,000,000 threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA").  *See also* Notice of Removal, [DE 1], at ¶12.

15.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to

personal jurisdiction, and because a substantial part of the events or omissions giving rise to the claim occurred in this District, and because Plaintiff was injured in this District.

## FACTS

16.     Defendant     owns     and     operates     the     following     website: www.kyliecosmetics.com.

17.     Over the past year, Plaintiff visited Defendant's website approximately 2 times.

18.     Plaintiff most recently visited Defendant's website on or about March 2021.

19.     Plaintiff intends to visit Defendant's website in the future to avail herself of the goods and services offered.

20.     Plaintiff was in Florida during each visit to Defendant's website.

21.     During her visits to the website, Plaintiff, through her computer and/or mobile device, transmitted electronic communications in the form of instructions to Defendant's computer servers utilized to operate the website.  The instructions were sent as messages instructing Defendant what content was being viewed, clicked on, requested, and inputted by Plaintiff.  The communications sent by Plaintiff to Defendant's servers included, but were not limited to, the following actions taken by Plaintiff while on the website: mouse clicks, frequency of mouse clicks, keystrokes, search terms inputted by Plaintiff, mouse gestures, information inputted by Plaintiff,

webpages and content viewed by Plaintiff, website scroll movements, and copy and paste actions.

22.    Plaintiff reasonably expected that her visits to Defendant's website would be private, and that Defendant would not be tracking, recording, and/or watching Plaintiff as she browsed and interacted with the website, particularly because Plaintiff was never presented with any type of pop-up disclosure or consent form alerting Plaintiff that her visits to the website were being recorded by Defendant.

23.    Plaintiff reasonably believed that she was privately interacting with Defendant's website, and not that she was being recorded and that those recordings could later be watched by Defendant's employees, or worse yet, live while Plaintiff was on the website.

24.    Moreover, Plaintiff's reasonable expectation of privacy was violated by Defendant in that Defendant transmitted and shared recordings of Plaintiff's website visits with the third-party entities that provided the session replay spyware to Defendant and/or with third party marketing companies.  In other words, not only was Plaintiff being watched by Defendant, she was also being watched by third parties with whom Defendant shared Plaintiff's electronic communications.

25.    Upon information and belief, over at least the past two years, Defendant has had embedded within its website code and has continuously operated at least one session replay software that was provided by a third party (a "Session Replay Provider").  The session replay spyware was always active and intercepted every

incoming data communication to Defendant's website the moment a visitor accessed the site.

26.     Defendant continues to utilize session replay spyware to monitor and record visitors to its website.

27.     The putative Class members are unaware that Defendant is monitoring and recording their visits to Defendant's website because Defendant fails to alert visitors to its site that it is using session replay spyware to monitor and record visits.

28.     The Session Replay Provider(s) that provided the session replay spyware to Defendant is not a provider of wire or electronic communication services, or an internet service provider.

29.     Defendant is not a provider of wire or electronic communication services, or an internet service provider.

30.     Defendant's use of session replay spyware was not instrumental or necessary to the operation or function of Defendant's website or business.

31.     Defendant's use of a session replay spyware to intercept Plaintiff's electronic communications was not instrumental or necessary to Defendant's provision of any of its goods or services. Rather, the level and detail of information surreptitiously collected by Defendant indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users to its website, and the information collected was solely for Defendant's own benefit.

32.     Defendant's use of a session replay spyware to intercept Plaintiff's electronic communications did not facilitate, was not instrumental, and was not

incidental to the transmission of Plaintiff's electronic communications with Defendant's website.

33.     Upon information and belief, during one or more of Plaintiff's visit to Defendant's website, Defendant utilized session replay spyware to intentionally and contemporaneously intercept the substance of Plaintiff's electronic communications with Defendant's website, including, but not limited to, the following communications:

       (a) mouse clicks;

       (b) frequency of mouse clicks;

       (c) mouse gestures and shakes;

       (d) keystrokes;

       (e) search terms;

       (f) information inputted into the website;

       (g) pages and content viewed;

       (h) webpage scroll movements; and

       (i) copy and paste actions.

34.     Defendant intercepted, recorded, and then stored the webpages visited by Plaintiff, as well as everything Plaintiff did on those pages, what Plaintiff searched for, what Plaintiff looked at, and the information Plaintiff inputted.

35.     The session replay spyware intentionally utilized by Defendant contemporaneously intercepted the electronic computer-to-computer data communications between Plaintiff's computer and/or mobile device and the computer

servers and hardware utilized by Defendant to operate its website—as the communications were transmitted from Plaintiff's computer and/or mobile device to Defendant's computer servers and hardware.

36.     The intercepted data was transmitted contemporaneously to the Session Replay Provider(s) server(s) as it was sent from Plaintiff's computer and/or mobile device.

37.     Specifically, session replay spyware captures internet communications between a website user and a website in real-time, while those communications are in transit.  The process is illustrated in the below diagram, which shows a user submitting a request (in the form of website interactions) to a web server. But, along the way, the session replay spyware intercepts those communications and diverts them to a "server-side capture engine," where the communications are stored for later analysis:



38.    The relevant facts regarding the full parameters of the communications intercepted and how the interception occurred are solely within the possession and control of Defendant.

39.    The session replay spyware utilized by Defendant is not a website cookie, standard analytics tool, tag, or web beacon.

40.    The session replay spyware utilized by Defendant is not commonplace, and Defendant is one of only a limited number of companies that record website visits without consumer consent.

41.    Unlike the harmless collection of an internet protocol address, the data collected by Defendant identified information inputted, and content viewed, and thus

revealed personalized and sensitive information about Plaintiff's internet activity and habits.

42.    The electronic communications intentionally intercepted by Defendant were content generated through Plaintiff's intended use, interaction, and communication with Defendant's website relating to the substance, purport, and/or meaning of Plaintiff's communications with the website, *i.e.*, mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content clicked on and viewed by Plaintiff.

43.    The electronic communications intentionally intercepted by Defendant were not generated automatically and were not incidental to Plaintiff's communications.

44.    The session replay spyware utilized by Defendant intercepted, copied, replicated, and sent the data in a manner that was undetectable by Plaintiff and the Class members.

45.    The electronic data communications were not only intercepted, but could also be used by Defendant to create a video playback of Plaintiff's visit to the website. Additionally, the session replay technology utilized by Defendant gave Defendant the ability to view Plaintiff's website visits live in real-time as they were occurring and being intercepted.

46.    Defendant's interception of Plaintiff's electronic communications allowed Defendant to capture, observe, and divulge Plaintiff's personal interests,

browsing history, queries, and habits as she interacted with and browsed Defendant's website.

47.     The session replay spyware utilized by Defendant allowed Defendant to record and understand consumer behavior that Defendant later utilized for behavior-based advertising.  For example, the software captures communications like "rage clicks," which are repeated clicks by a visitor that typically reflect the visitor's frustration with a product or component of the website.

48.     A consumer's behavior while on a website, including mouse movements, gestures, rage clicks, pages viewed, and content clicked on, are communications that convey a consumer's intent and preferences.

49.     Typically, companies utilize analytics tools like cookies to gain quantitative insight into the performance of their website and products (e.g., page hits, page views, total items sold, etc.).

50.     Session replay spyware is utilized to gain qualitative insight into consumer behavior with the ultimate goal of learning consumers' likes and dislikes so that they can be presented with targeted advertising.

51.     The session replay spyware utilized by Defendant allows it to map a visitor's entire journey on a website, including multiple visits over time, and then create a profile for that visitor.

52.     Upon information and belief, Defendant creates profiles for visitors to its website that include qualitative information obtained, in part, through session replay spyware.

53.     Defendant then utilizes and/or shares the information collected with a third-party to generate targeted behavior-based advertising.

54.     Upon information and belief, Defendant similarly intercepted the electronic communications of over 5,000 individuals located in Florida who visited Defendant's website.

55.     Defendant did not utilize a telephone or telegraph instrument, equipment, or facility thereof to intercept Plaintiff's and the Class members' electronic communications at issue.  Rather, Defendant utilized a spyware embedded within its website to intercept the communications at issue.

56.     Plaintiff's electronic communications did not originate from an electronic or mechanical device which permits the tracking of the movement of a person or an object.

57.     Plaintiff's electronic communications did not originate from a tracking device, *i.e.*, a device whose primary purpose is to reveal its location or movement by the transmission of electronic signals.

58.     The session replay spyware utilized by Defendant is not a tracking device, *i.e.*, a device whose primary purpose is to reveal its location or movement by the transmission of electronic signals.

59.     The session replay spyware utilized by Defendant cannot track the movement of a physical object or body of a person.

60.     The session replay spyware utilized by Defendant cannot reveal its location or movement by the transmission of electronic signals.

61.     The session replay spyware utilized by Defendant did not originate any of the communications at issue.   Instead, it solely intercepted communications originating from Plaintiff's computer and/or mobile device.

62.     Defendant never alerted or asked Plaintiff or the Class Members for permission to intercept and record their visits to Defendant's website using session replay spyware.

63.     Plaintiff and the Class members never consented to interception of their electronic communications by Defendant or anyone acting on Defendant's behalf, and they were never given the option to opt out of Defendant's recording.

64.     At no point in time did Plaintiff or the Class members provide Defendant, its employees, or agents with consent to intercept their electronic communications using session replay spyware.

65.     At no point in time did Plaintiff or the Class members specifically, clearly, and unmistakably consent to Defendant's interception and recording of their electronic communications using session replay spyware.

66.     At no point in time did Plaintiff or the Class members specifically, clearly, and unmistakably consent to Defendant's interception and recording of their visits to Defendant's website using session replay spyware.

67.     Plaintiff and the Class members did not have a reasonable opportunity to discover Defendant's unlawful interceptions because Defendant did not disclose its interception nor seek consent from Plaintiff and the Class members prior to interception of their communications.

14

68.     Plaintiff and the Class members never clicked or otherwise agreed to any disclosure or consent form authorizing Defendant to intercept Plaintiff's and the Class members' electronic communications using session replay spyware.

69.     Defendant intercepted Plaintiff's and the Class members' electronic communications from the moment they landed on Defendant's website, and before they had an opportunity to even consider consenting or agreeing to any privacy or terms of use policy on the website.  In other words, Defendant's unlawful interception occurred before Plaintiff and the Class members were given an opportunity to review, let alone consent, to any language that Defendant may claim purportedly authorized its violations of the FSCA.

70.     Moreover, Defendant's website failed to explicitly alert or otherwise notify Plaintiff and the Class members that Defendant would be utilizing session replay spyware to monitor and record their interactions with Defendant's website.

71.     Additionally, immediately upon landing on Defendant's website, Plaintiff and the Class members were not alerted that by entering the website, Defendant would unilaterally attempt to bind them to Defendant's terms and policies or privacy policy.  Indeed, the landing page to Defendant's website not only fails to advise visitors that Defendant is intercepting their electronic communications, it does not contain any type of conspicuous disclosure regarding Defendant's terms of use or privacy policy.

72.     Plaintiff and the Class members were not immediately required to click on any box or hyperlink containing Defendant's privacy policy upon visiting the website or in order to navigate through the website.

73.     Plaintiff and the Class members were not placed on notice of Defendant's privacy policy upon immediately visiting the website.  Instead, Defendant's privacy policy is buried at the bottom of Defendant's website.

74.     In fact, in order to even become aware of the privacy policy hyperlink, Plaintiff would have had to scroll all the way to the bottom of Defendant's website.

75.     Consequently, Plaintiff was not placed on notice of Defendant's privacy policy because it was buried at the bottom of Defendant's website among a number of other hyperlinks.

76.     Defendant does not require visitors to its website to immediately and directly acknowledge that the visitor has read Defendant's privacy policy before proceeding to the site.  In other words, Defendant's website does not immediately direct visitors to the site to the privacy policy and does not require visitors to click on a box to acknowledge that they have reviewed policy in order to proceed to the website.

77.     Defendant's privacy policy is silent on Defendant's use of session replay spyware to monitor and record Plaintiff's and the Class member's (1) mouse clicks and movements; (2) keystrokes; (3) search terms; (4) information inputted into the website; and (5) pages and content viewed.

78.     Moreover, the session replay spyware utilized by Defendant is not a cookie.   Unlike session replay spyware, cookies are a feature of web browser software that allow web servers to recognize the computer used to access a web site. Cookies are small pieces of data that are stored by a user's web browser on the user's hard drive. Thus, Plaintiff's and the Class members' consent to Defendant's use of cookies, if any, is irrelevant to Defendant's use of session replay to spy on Plaintiff and the Class members and does not constitute consent to Defendant's use of session replay.

79.     Upon information and belief, at least one of the purposes of Defendant's interception of Plaintiff's and the Class members' electronic communications was to allow Defendant to learn of Plaintiff's and the Class members' personal preferences and likes, which would then be used to market Defendant's services and goods to Plaintiff and the Class members.

80.     Defendant's surreptitious interception of Plaintiff's and the Class members' electronic communications caused Plaintiff and the Class members harm, including violations of their substantive legal privacy rights under the FSCA, invasion of privacy, invasion of their rights to control information concerning their person, and/or the exposure of their private information. Moreover, Defendant's practices caused harm and a material risk of harm to Plaintiff's and the Class Members' privacy and interest in controlling their personal information, habits, and preferences.

## CLASS ALLEGATIONS

### PROPOSED CLASS

81.     Plaintiff brings this lawsuit as a class action on behalf of all other similarly situated persons pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  The "Class" that Plaintiff seeks to represent is defined as:

> **All persons residing within the State of Florida (1) who visited Defendant's website and (2) whose electronic communications were intercepted by Defendant or on Defendant's behalf (3) without their prior consent.**

82.     Defendant and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

### NUMEROSITY

83.     The Class members are so numerous that individual joinder of all Class members is impracticable. As Defendant has conceded, it intercepted the electronic communications, at a minimum, of over 100 individuals. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include notice on Defendant's website, U.S. Mail, electronic mail, Internet postings, and/or published notice.

84.     The identities of the Class members are unknown at this time and can be ascertained only through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records kept in connection with its unlawful interceptions.

### COMMON QUESTIONS OF LAW AND FACT

85.     There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

(1) Whether Defendant violated the FSCA;

(2) Whether Defendant intercepted Plaintiff's and the Class members' electronic communications;

(3) Whether Defendant disclosed to Plaintiff and the Class Members that it was intercepting their electronic communications;

(4) Whether Defendant secured prior consent before intercepting Plaintiff's and the Class members' electronic communications;

(5) Whether Defendant is liable for damages, and the amount of such damages;

(6) Whether Defendant should be enjoined from such conduct in the future;

(7) Whether Plaintiff and the Class members are entitled to declaratory relief; and

(8) Whether Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making final injunctive or declaratory relief appropriate.

86.     The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendants routinely intercepts electronic

communications without securing prior consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

87.     Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

88.     Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### SUPERIORITY

89.     A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are potentially in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

90.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.   For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.   Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**REQUIREMENTS OF FED. R. CIV. P. 23(b)(2)**

91.    Defendant has acted and refused to act on grounds generally applicable to the Class by engaging in a common course of conduct of uniformly monitoring and recording visits to its websites without consent, thereby making appropriate final injunctive relief or declaratory relief with respect to the classes as a whole.

**COUNT I**
**Violations of the FSCA**
**(On Behalf of Plaintiff and the Class)**

92.    Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

93.    It is a violation of the FSCA to intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept any electronic communication.  Fla. Stat. § 934.03(1)(a).

94.    Further, it is a violation to intentionally use, or endeavor to use, "the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection[.]" Fla. Stat. § 934.03(1)(d).

95.     The FSCA defines "intercept" as the "acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."  Fla. Stat. § 934.02(3).

96.     Under the FSCA, "contents" includes, but is not limited to, "any information concerning the substance, purport, or meaning of that communication." Fla. Stat. § 934.02(7).

97.     The FSCA defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects intrastate, interstate, or foreign commerce…."  Fla. Stat. § 934.02(12).

98.     Unlike "oral communications" under the FSCA, "electronic communications" have no expectation of privacy requirement.  *See* Fla. Stat. § 934.02(2) ("'Oral communication' means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation and does not mean any public oral communication uttered at a public meeting or any electronic communication.").

99.     The session replay code script utilized by Defendant to intercept Plaintiff's and the Class members' electronic communications constitute an electronic or other device under the FSCA as (1) it is not a telephone or telegraph equipment, or any component thereof; and/or (2) it was not furnished to Defendant by a provider of wire or electronic communication services.  Fla. Stat. § 934.02(4).

100.   The session replay spyware utilized by Defendant is a device or apparatus that can be used to intercept a wire, electronic, or oral communication.

101.   Defendant violated § 934.03(1)(a) of the FSCA by intercepting Plaintiff's and the Class members' electronic communications when they visited Defendant's website.

102.   Defendant intercepted Plaintiff's and the Class members' electronic communications utilizing a device or apparatus that can be used to intercept a wire, electronic, or oral communication, *i.e.*, session replay spyware.

103.   Defendant intercepted Plaintiff's and the Class members' electronic communications without their prior consent.

104.   Defendant continues to utilize session replay spyware on its website to intercept inbound electronic communications.

105.   Upon information and belief, Defendant used or attempt to use the electronic communications it intercepted in order to market its services and goods to Plaintiff and the Class members.

106.   Although not required to state a claim under the FSCA, Plaintiff and the Class members had a reasonable expectation of privacy during their visits to Defendant's website, which Defendant violated by intercepting their electronic communications with the website and by sharing those communications and/or making them available to third parties.

107.     Plaintiff and the Class members face a real and immediate threat of future injury from Defendant's continued use of session replay spyware to monitor and record their visits to its website.

108.     Plaintiff and the Class members have no control over Defendant's use of session replay spyware to monitor and record their visits to its website.

109.     As a result of Defendant's conduct, and pursuant to § 934.10 of the FSCA, Plaintiff and the other members of the putative Class were harmed and are each entitled to "liquidated damages computed at the rate of $100 a day for each day of violation or $1,000, whichever is higher[.]" Fla Stat. § 934.10(b).

110.     Plaintiff is also entitled to "reasonable attorney's fees and other litigation costs reasonably incurred."  Fla Stat. § 934.10(d).

111.     Plaintiff and the Class members are also entitled to an injunction prohibiting Defendant from continuing to utilize session replay spyware on its website.

112.     Plaintiff and the Class members request for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## COUNT II
## <u>Declaratory and Injunctive Relief</u>
**(On Behalf of Plaintiff and the Class)**

113.     Plaintiff re-alleges and incorporates the allegations set in paragraphs 1 through 91 as if fully set forth herein.

114.    Under the FSCA, Plaintiff and the Class members are entitled to "[p]reliminary or equitable or declaratory relief as may be appropriate[.]" Fla. Stat. § 934.10(1)(a).

115.    Plaintiff and the Class members seek a declaration that Defendant's use of session replay software as alleged herein violates the FSCA.

116.    Pursuant to § 934.10(1)(a), Plaintiff and the Class members seek an injunction prohibiting Defendant from utilizing session replay software to monitor and record visits to its website without first securing consent.

117.    Defendant's ongoing and continuing violations have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and the Class members.

118.    Plaintiff and the Class members will suffer irreparable harm if Defendant is permitted to continue its practice of recording website visits utilizing session replay software.

119.    The injuries that the Plaintiff and the Class members will suffer if Defendant is not prohibited from continuing to engage in the illegal practices described herein far outweigh the harm that Defendant will suffer if it is enjoined from continuing this conduct.

120.    The public interest will be served by an injunction prohibiting Defendant from continuing to engage in the illegal practices described herein.

121.    Plaintiff and the Class members request for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and the other members of the Class, prays for the following relief:

a. An order certifying the Class and appointing Plaintiff as Class Representative and her counsel as Class Counsel;

b. A declaration that Defendant's practices described herein violate the Florida Security of Communications Act;

c. An injunction prohibiting Defendant from intercepting the electronic communications of individuals visiting Defendant's website through the use of session replay spyware without their prior knowledge and consent;

d. An award of actual damages, statutory damages, liquidated damages, and/or punitive statutory damages;

e. An aware of reasonable attorney's fees and costs; and

f. Such further and other relief the Court deems reasonable and just.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists, electronic databases or other itemizations in the possession

of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in intercepting the alleged communications.

Dated: August 12, 2021

Respectfully Submitted,

By:   **HIRALDO P.A.**

*/s/ Manuel S. Hiraldo*
Manuel Hiraldo, Esq.
Florida Bar No. 030380
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
mhiraldo@hiraldolaw.com
Telephone: 954-400-4713

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 705
Miami, Florida 33132
(t) (305) 479-2299
(f) (786) 623-0915

**EDELSBERG LAW, PA**
Scott Edelsberg, Esq.
Florida Bar No. 100537
scott@edelsberglaw.com
Christopher Gold, Esq.
Florida Bar No. 88733
20900 NE 30th Ave., Suite 417
Aventura, FL 33180
Telephone: 305-975-3320
*Counsel for Plaintiff and Proposed Class*